UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DWIGHT D. HICKS, ANTONIO MELENDEZ,
and JAMES E. SMITH,

                    Plaintiffs,

             -vs-                           99-CV-0315C(Sc)

TOMMY E. BAINES, Individually and in his official
capacity; and JOHN A. JOHNSON, in his official
capacity as Commissioner of The New York State
Office of Children and Family Services,

                    Defendants.

---

APPEARANCES:       LAW OFFICE OF DAVID J. SEEGER (ALISON L. ODOJEWSKI, ESQ., OF COUNSEL), Buffalo, New York, for Plaintiffs.

                        WILLIAM R. HITES, ESQ., Buffalo, New York, for Defendant Baines.

                        ELIOT SPITZER, ATTORNEY GENERAL OF THE STATE OF NEW YORK (MICHAEL J. RUSSO, Assistant Attorney General, of Counsel), Buffalo, New York, for Defendant Johnson.

**INTRODUCTION**

This is an employment discrimination and retaliation case brought pursuant to Title 42 U.S.C. §§ 1981, 1981a, and 1983 and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296. The plaintiffs, employees of the New York State Office of Child and Family Services ("NYSOCFS"),[1] allege that they were discriminated against and retaliated against because they cooperated in an investigation into discriminatory

---

[1] Plaintiff Melendez is deceased.

behavior committed by defendant Baines against a former co-worker, Mark Pasternak, the

plaintiff in a related discrimination case (Case No. 00-CV-369).  Specifically, plaintiffs

allege that in retaliation for their assistance to Pasternak, Baines manipulated their work

schedules, fabricated complaints of wrongdoing, deprived them of pay, destroyed their

timesheets, and made threats toward them.  Plaintiffs allege that defendant Johnson, the

Commissioner of the NYSOCFS, has supervisory control over Baines and the power to

enjoin Baines' retaliatory and discriminatory conduct.   Both defendants Baines and

Johnson have moved for summary judgment dismissing the complaint.

## BACKGROUND and FACTS

At all times relevant to this action, defendant Baines was Facility Director for the

NYSOCFS and had supervisory responsibility for two residential facilities, including the

Buffalo Evening Reporting Center ("ERC").  Item 51, Exh. 7 ("Baines Dep."), pp. 11-13.

Plaintiff James Smith testified in a deposition that he began working for the NYSOCFS in

1980 and became a Youth Division Aide in 1983 or 1984.  Item 51, Exh. 1 ("Smith Dep."),

pp. 5-8.  He was a shop steward with his union, CSEA local 562.  *Id.,* p. 17.  Smith worked

with Melendez, Hicks, and Pasternak at the Buffalo ERC, a facility run by the NYSOCFS.

In 1997, plaintiffs met with a NYSOCFS investigator regarding Baines' alleged

discrimination toward Mark Pasternak.  *Id.,* pp. 49 - 53.  Smith told the investigator that

Baines had used "slang words" such as "white boy" to refer to Pasternak, and encouraged

the other employees to shun Pasternak.  *Id.,* p. 57.  After he assisted in the investigation,

Smith stated that Baines retaliated against him.  *Id.* p. 93.  Specifically, Smith stated that

his immediate supervisor, Seabron Johnson, issued fabricated disciplinary memos, and

that Baines complained that Smith did not leave the facility clean.  *Id.,* p. 101.  Smith was not disciplined for this, but it was cited in a log book.  *Id.,* pp. 102-03.

In his deposition, plaintiff Dwight Hicks testified that he was employed by the NYSOCFS and was supervised by defendant Baines from 1995.  Item No. 51, Exhs. 3 - 5 ("Hicks Dep."), p. 5.  He cooperated in the investigation into Pasternak's allegations of discrimination by Baines in 1996, and testified at Pasternak's Workers' Compensation hearing.  *Id.,* pp. 38, 42.  Hicks stated that Baines harassed him before he cooperated in the investigation, and the harassment increased after his cooperation.  *Id.,* pp. 46, 182.  In retaliation for his cooperation with the investigation, Baines allegedly changed the work schedule of the ERC, eliminating shifts so that Hicks and the other plaintiffs could not bid on them.  *Id.,* p. 67.

Plaintiff Hicks further testified that on November 5, 1998, he was directed to transport a youth from South Park High School in Buffalo to a NYSOCFS facility in Industry, New York.  There was a discrepancy between the time Hicks stated he arrived at Industry and the time reflected in the log at the Industry facility.  Hicks was directed to finish his shift in Buffalo when he returned, but he did not report.  Hicks stated that he was disciplined for this incident by his immediate supervisor, Seabron Johnson.  According to Hicks, Johnson apologized and explained that Baines had directed him to discipline Hicks.  Hicks lost two hours of pay for the day, although he did not file a grievance regarding the downward adjustment in his pay.  *Id.,* pp. 47 - 52.

In affidavits in opposition to the motions for summary judgment, plaintiffs stated that Baines threatened "bodily harm" to any employees who assisted Pasternak.  Item 64,

Exh. 3 ("Hicks Affidavit"), ¶ 12; Item 65 ("Smith Affidavit"), ¶ 12.  They also stated that

Baines threatened that their assistance to Pasternak "may result in closing of agency

facilities and their loss of employment."  Hicks Affidavit, ¶ 16, Smith Affidavit, ¶ 16.  Hicks

and Smith stated that following their assistance in the investigation and their testimony at

Pasternak's Workers' Compensation hearing, Baines ordered them to perform duties

outside their job descriptions, noted false entries in facility log books, purposefully

sabotaged the ERC so as to reflect poorly on plaintiffs' job performance, intentionally

misplaced documents, and drafted and submitted false memoranda for placement in

plaintiffs' personnel files.  Hicks Affidavit, ¶ 27; Smith Affidavit, ¶ 27.

Specifically, Hicks and Smith state that Baines "allegedly entered the facility after

hours and without logging his presence . . . in the log books as required" on several

occasions to compromise the security of the site.  Hicks Affidavit, ¶¶ 28, 30, 36; Smith

Affidavit, ¶¶ 28, 30, 36.  They state that Baines failed to assign sufficient staff to the ERC,

causing plaintiffs to work their shifts alone on at least seven occasions in 1998.  Hicks

Affidavit, ¶¶ 32, 33; Smith Affidavit, ¶¶ 32, 33.  Plaintiffs complain that Baines drafted and

filed false counseling memoranda for placement in plaintiff Smith's personnel file, resulting

in the docking of Smith's pay.  Smith Affidavit, ¶¶ 39, 42.[2]  They also state that Baines

---

[2]  Attached to the Smith Affidavit is a complaint filed with the New York State Division of Human Rights on April 18, 2001 regarding Smith's allegation that he was wrongfully accused of tardiness in February 1998 and was docked for 15 minutes of pay.  The parties subsequently entered into a conciliation agreement, in which plaintiff Smith agreed to withdraw his union grievance regarding the 15 minutes of lost wages and to discharge the NYSOCFS "from any other claims, demands, actions, causes of action, damages and costs of or growing out of known and unknown claims relating to the subject matter of this action or the events giving rise to the claims asserted in this action."  The 15 minutes of docked wages was not restored. *See* Item 65, Exh. H.

"purposefully 'misplaced' key documents and reports" on 16 occasions from 1996 to 1998. Hicks Affidavit, ¶ 41; Smith Affidavit, ¶ 43.

Plaintiffs further state that Baines intentionally refused to pay the utility and food accounts of the ERC, requiring plaintiffs to pay out-of-pocket expenses for the youths' lunches on February 18, 1998.  Hicks Affidavit, ¶¶ 42, 43; Smith Affidavit, ¶¶ 44, 45. Plaintiffs complain that Baines altered their work schedules without notice for the purpose of defeating their right to bid on certain schedules, and scheduled shifts in violation of the collective bargaining agreement.  Hicks Affidavit, ¶¶ 45-47, 51; Smith Affidavit, ¶47, 52. Plaintiff Smith states that "Baines did deprive deponent and his fellow Plaintiffs of numerous hours of lost work time as Defendant Baines would dock deponent and his fellow Plaintiffs' wages for false allegations of tardiness."  Smith Affidavit, ¶ 55; Hicks Affidavit, ¶ 64.

Baines testified that Seabron Johnson prepared a counseling memorandum for plaintiff Hicks regarding the trip to Industry, New York.  Seabron Johnson advised Baines that Hicks went to Industry and did not return to Buffalo in a timely manner. Baines Dep., p. 237.  Baines played no role in the generation of the counseling memorandum, although he received a copy of it.  *Id.,* pp. 236-37.

## DISCUSSION

### 1.  Baines' Motion for Summary Judgment

Baines states that the plaintiffs have alleged five retaliatory acts in their complaint, and argues that the plaintiffs have offered no proof of retaliation beyond conclusory allegations.  He also states that plaintiffs have failed to show that they suffered an adverse

employment action.  Finally, Baines argues that the plaintiffs have similarly failed to show a violation of the New York State Human Rights Law or that they were denied the equal protection of the law.

In response to Baines' motion, plaintiffs argue that they have shown a *prima facie* case of discrimination and retaliation.  They state that Baines threatened that their cooperation with the Pasternak investigation could result in the closing of the ERC, and stated that he would "'get the rats out, especially the white boy.'"  Hicks Affidavit, ¶ 17; Smith Affidavit, ¶ 17.  Plaintiffs also argue that after they cooperated with the investigation, Baines ordered them to perform duties outside of their job responsibilities, sabotaged the workings of the ERC so as to reflect poorly on them, and drafted false memoranda for placement in their personnel files.

The court notes that the deposition transcripts of Hicks and Smith are lacking any factual detail in support of their retaliation claim.  In their affidavits in opposition to the motion for summary judgment (Item 64, Exh. 3; Item 65), Hicks and Smith make the additional allegations that Baines entered the ERC after hours, allegedly to undermine security and sabotage plaintiffs.  They also allege that they were required at times to work their shifts alone because Baines understaffed the ERC.  They allege that Baines purposely misplaced documents, filed false disciplinary memos, let ERC accounts go past-due to cause them anxiety and stress, manipulated their schedules so that they could not bid on certain shifts, and docked their pay for false incidents of tardiness.

Despite the length of the plaintiffs' affidavits, the allegations contained therein are conclusory at best.  For instance, plaintiffs allege that on May 9, 1998, Hicks "discovered dirty dishes in the sink and a knife missing from the locked knife drawer.  Upon information

and belief, Defendant Baines removed the knife from the drawer to torment, retaliate and add stress" to the plaintiffs.  Item Nos. 64, 65, ¶ 37.  Plaintiffs offer no proof that Baines entered the facility after hours; they state that "upon information and belief, Defendant Baines was in fact entering the facility during non-operational hours."  Hicks Aff., ¶ 36; Smith Aff., ¶ 36.  Likewise, they offer no proof that Baines "purposely left the computer room window ajar thereby prohibiting deponent and his fellow Plaintiffs from setting the facility alarm . . . ."  Hicks Affidavit, ¶ 38; Smith Affidavit, ¶ 38.  While plaintiffs allege that Baines caused them to have their pay docked on false allegations of tardiness, the only specific allegation is that Hicks was docked two hours of pay when he transported a youth to Industry, New York, and Smith was docked for 15 minutes of pay for alleged tardiness. Baines does not deny Hicks' allegation, but states that discipline was imposed by Hicks' immediate supervisor, Seabron Johnson.  Additionally, Baines states that there was a legitimate reason for Hicks' pay to be docked due to a discrepancy in the time that Hicks stated he arrived at Industry and the time noted in a facility log book.

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A moving party is entitled to judgment as a matter of law if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323  (1986).  The court, however, views all of the evidence presented in the light most favorable to the party against whom summary judgment is sought, and draws all reasonable inferences in his favor.  *See*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A genuine issue of material fact exists when there is sufficient evidence favoring the nonmoving party such that a jury could return a verdict in its favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmoving party may not rest upon unsubstantiated allegations, conclusory assertions, or mere denials, but must set forth and establish specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). A metaphysical or other whimsical doubt concerning a material fact does not establish a genuine issue requiring trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 584.   If there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper.  *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

In their first cause of action, plaintiffs bring their claim for race discrimination and retaliation under 42 U.S.C. § 1981 which provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  This section outlaws "discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment . . . ."  *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004).[3]  In their second cause of action pursuant to 42 U.S.C. §1983, plaintiffs allege that they were denied equal protection by a person acting under color of law.  *See Demoret v. Zegarelli*, 2006 WL 1554229 (2d Cir. June 8, 2006) (section 1983 and the Equal Protection Clause protect public employees

_____

[3]In their third cause of action, plaintiffs allege discrimination and retaliation in violation of the NYSHRL.

from discrimination, including hostile work environment and disparate treatment).  All of these claims are analyzed under the same standards as are used in Title VII cases, according to the burden-shifting framework laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (in claims of employment discrimination under section 1981, courts apply the same standards as in Title VII cases); *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998) ("In analyzing whether conduct was unlawfully discriminatory for purposes of § 1983, we borrow the burden-shifting framework of Title VII claims.")*; Hargett v. Nat'l Westminster Bank, USA*, 78 F.3d 836, 838 (2d Cir.) (analyzing section 1981 employment discrimination claim under burden-shifting test), *cert. denied*, 519 U.S. 824 (1996); *Brennan v. City of White Plains*, 67 F. Supp.2d 362, 371-72 (S.D.N.Y. 1999) (the legal standards governing claims under 42 U.S.C. § 1983 and the New York Human Rights Law are the same as Title VII).

Under *McDonnell Douglas,* the plaintiffs must first establish a *prima facie* case of race discrimination or retaliation.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).  Once this is done, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action.  If the employer meets its burden, "the *McDonnell Douglas* presumptions disappear from the case," *James v. New York Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000), and "the trier of fact proceeds to decide the ultimate question:  whether plaintiff has proven that the defendant intentionally discriminated against him because of his race." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993) (internal quotation and citation omitted).

Plaintiffs may establish a *prima facie* case of discrimination by showing:  1) that they belonged to a protected class; 2) that they were qualified for the positions they held; 3) that they suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).

> "To make out a *prima facie* case of retaliation, an employee must show that the employee was engaged in protected activity; that the employer was aware of that activity; that the employee suffered adverse employment decisions; and that there was a causal connection between the protected activity and the adverse employment action."

*Id.,* (quoting *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).  For purposes of Baines' motion, the court will assume that plaintiffs are members of a protected class and that they were engaged in protected activity.  Plaintiffs have failed, however, to establish a *prima facie* case of retaliation as they have not offered evidence that they suffered an adverse employment action.

Not every disciplinary action taken against an employee is an "adverse employment action;" rather, only a "'materially adverse change' in the terms and conditions of employment" is actionable under a disparate treatment theory.  *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).  For purposes of a retaliation claim, "an important consideration is whether the action is one that would deter a similarly situated individual of ordinary firmness from exercising his or her . . . rights."  *Hoyt v. Andreucci*, 433 F.3d 320, 328 (2d Cir. 2006).  In either case, an action is materially adverse only if it is "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Galabya*, 202 F.3d at 6040; *see also Weeks v. New York State*, 273 F.3d

76, 85 (2d Cir. 2001) (internal quotation marks and citation omitted), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  Examples of materially adverse actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Id.* (internal quotation marks and citation omitted).  Verbal humiliation, unfair criticism, or unfavorable schedules or work assignments do not rise to the level of adverse employment actions because they do not have a material impact on the terms and conditions of a plaintiff's employment.  *See Smalls v. Allstate Ins. Co.*, 2005 WL 2614862, *4 (S.D.N.Y. October 10, 2005); *Lee v. New York State Dept. of Health*, 2001 WL 34031217, *16 (S.D.N.Y. April 23, 2001).  It is "settled law in this Circuit that the receipt of a counseling memo or notice of discipline does not constitute an adverse employment action."  *Magilton v. Tocco*, 379 F. Supp. 2d 495, 507 (S.D.N.Y.2005) (citing *Weeks*, 273 F.3d at 86).  Likewise, negative "[e]valuations are adverse employment actions only if they affect ultimate employment decisions such as promotions, wages or termination." *Johnson v. Connecticut Dept. of Corr.*, 392 F. Supp. 2d 326, 340 (D.Conn. 2005) (quoting *Knight v. City of New York*, 303 F. Supp. 2d 485, 497 (S.D.N.Y. 2004), *aff'd*, 147 Fed. Appx. 221 (2d Cir. 2005).; *see also Kasmierczak v. Hopevale, Inc.*, 2006 WL 1582384, *19 (WDNY June 6, 2006) ("An unsatisfactory evaluation or counseling memo with respect to job performance is insufficient, without more, to constitute an adverse employment action.") (citing *Fairbrother v. Morrison*, 412 F.3d 39, 56-57 (2d Cir. 2005)).

Even accepting the truth of all of the allegations in plaintiffs' affidavits filed in response to the motion for summary judgment and affording plaintiffs the benefit of every inference, plaintiffs have failed to raise a genuine issue of material fact that they suffered any adverse employment action as a result of the alleged actions of defendant Baines. The court has carefully reviewed the submissions in response to the motion for summary judgment and finds that plaintiffs' affidavits contain only conclusory allegations of job sabotage, schedule changes, misplacing of documents, idle threats, and unwarranted counseling memoranda, none of which resulted in any meaningful change in the terms and conditions of plaintiffs' employment.[4]

The only specific allegations that arguably evince an adverse employment action are the docking of two hours of plaintiff Hicks' pay for his late return from Industry, New York, and the docking of 15 minutes of plaintiff Smith's pay for alleged tardiness. *See Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 100 (2d Cir. 2002) (docking of employee's pay is direct economic harm and tangible employment action); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223-24 (2d Cir. 2001) (suspension without pay for one week is sufficient to constitute an adverse employment action); *Slaitane v. Sbarro, Inc.*, 2004 WL 1202315, * 15 (S.D.N.Y. June 02, 2004) (removal of two days from employee's schedule was adverse employment action); *Satterfield v. United Parcel Serv., Inc.*, 2003 WL 22251314, *10 (S.D.N.Y. Sept. 30, 2003) (one-day suspension without pay falls within the

---

[4] The cases plaintiffs cite do not support their argument that they suffered an adverse employment action. In each of those cases, the plaintiff suffered an adverse employment action such as discharge, demotion, or failure to promote. *See Lauer v. Schewel Furniture Co.,* 84 Fed. Appx. 323 (4th Cir. 2004) (employee discharged); *Essex v. United Parcel Serv., Inc.,* 111 F.3d 1304 (7th Cir. 1997) (employee discharged); *Uddin v. New York City,* 2001 WL 15694 (S.D.N.Y. January 8, 2001) (employee suffered adverse employment action in that he was not promoted to supervisory position); *Walker v. Rochester Telephone Corp.,* 1992 WL 518685 (W.D.N.Y. April 14, 1992) (employee demoted).

Second Circuit's definition of "materially adverse" action); *Page v. Connecticut Dep't of Pub. Safety*, 185 F. Supp. 2d 149, 157 (D.Conn. 2002) (suspension for two days without pay constitutes adverse employment action).

Assuming that the loss of 15 minutes or two hours pay is a "'materially adverse change' in the terms and conditions of employment," *see Galabya v. New York City Bd. of Educ.*, 202 F.3d at 640, defendant has stated legitimate, non-retaliatory reasons for the actions.  In plaintiff Smith's case, his pay was docked for alleged tardiness.  The record indicates that Smith filed a grievance relating to the charge and entered into a conciliation agreement, whereby he withdrew his grievance and discharged all claims relating to the incident without a restoration of the 15 minutes of pay.  Accordingly, the court concludes that the allegation of tardiness was not without some merit.  Additionally, there is nothing in the record to suggest that the docking of Smith's pay was pretextual and retaliatory.  In plaintiff Hicks' case, his pay was docked for an untimely return from Industry, New York, and his failure to complete his shift at his Buffalo worksite. There was a discrepancy between the time Hicks stated he arrived at Industry and his arrival time as reflected in the logs at the Industry facility.  The record indicates that the disciplinary memorandum was prepared by Hicks' immediate supervisor, Seabron Johnson, not defendant Baines.  There is no admissible evidence that Baines instructed Johnson to discipline Hicks and dock his pay in retaliation for Hicks' cooperation in the Pasternak investigation.  Neither Smith nor Hicks has offered any evidence that the reasons for the adverse actions were pretextual, and thus they have failed to sustain their burden under *McDonnell Douglas.*  Accordingly, defendant Barnes' motion for summary judgment is granted, and the complaint is dismissed.

## 2.  Johnson's Motion for Summary Judgment

Defendant Johnson, who is sued in his official capacity as the Commissioner of the

NYSOCFS, argues that the only relief available from him is prospective injunctive relief

restraining any future violations of plaintiffs' civil rights.  As the plaintiffs have alleged no

ongoing constitutional violations, he argues that no relief is available, and the case against

him should be dismissed.  Johnson further argues that plaintiff Melendez passed away

before his deposition could be taken, and thus Melendez has offered no proof to support

his claims.

In response to the motion, plaintiffs contend that they seek prospective injunctive

relief from Johnson and attorney fees, which are considered ancillary to the constitutional

clam and not barred by the Eleventh Amendment.  Hicks and Smith are still employed by

the NYSOCFS, and they argue that they face the risk of future discrimination by Baines.

They also argue that Johnson knew of Baines' unlawful behavior and took no remedial

action.[5]

A claim for money damages against a state official acting in his official capacity is

barred by the Eleventh Amendment, *see Edelman v. Jordan,* 415 U.S. 651 (1974), and a

federal court cannot enjoin violations of state law.  *See Pennhurst State Sch. & Hosp. v.*

*Halderman,* 465 U.S. 89, 106 (1984).  A claim for injunctive relief is only proper where a

plaintiff seeks to remedy an ongoing violation of federal law.  *See Ex parte Young,* 209

U.S. 123 (1908).  Whether a litigant's claim falls under the *Ex parte Young* exception to the

---

[5]  Plaintiffs also argue, in conclusory fashion, that the death of Melendez does not defeat his claims.

Eleventh Amendment's bar against suing a state is a "straightforward inquiry" that asks "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted). "[A] continuing violation may be found 'where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Quinn v. Green Tree Credit Corp*., 159 F.3d 759, 766 (2d Cir. 1998) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994); *see also Annis v. County of Westchester*, 136 F.3d 239, 245-46 (2d Cir. 1998). Here, the plaintiffs have alleged no ongoing violation of federal law, only discrete acts of past retaliation and discrimination by defendant Baines. It is well-settled that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *cert. denied*, 511 U.S. 1052 (1994). Additionally,  the court has concluded that plaintiffs have failed to raise a genuine issue of  material fact with respect to their claims under section 1981, section 1983, and the NYSHRL, and the complaint is dismissed. Accordingly, defendant Johnson's motion for summary judgment is granted.

## CONCLUSION

The motions for summary judgment are granted, and the complaint is dismissed. Judgment shall be entered for defendants.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: July   14   , 2006
p:\opinions\99-315.june1306