UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DWIGHT D. HICKS, ANTONIO MELENDEZ,
and JAMES E. SMITH,

                    Plaintiffs,

       -vs-                                          99-CV-0315C(Sc)

TOMMY E. BAINES, Individually and in his official
capacity; and JOHN A. JOHNSON, in his official
capacity as Commissioner of The New York State
Office of Children and Family Services,

                    Defendants.

---

APPEARANCES:       DAVID J. SEEGER, ESQ., Buffalo, New York, for Plaintiffs.

                          WILLIAM R. HITES, ESQ., Buffalo, New York, for Defendant Baines.

**INTRODUCTION**

This is an employment discrimination and retaliation case brought pursuant to Title 42 U.S.C. §§ 1981, 1981a, and 1983 and the New York State Human Rights Law ("NYSHRL"), Executive Law § 296. The plaintiffs, employees of the New York State Office of Child and Family Services ("OCFS"),[1] allege that they were discriminated against and retaliated against because they cooperated with an investigation into discriminatory behavior committed by defendant Baines against a former co-worker. Specifically, the plaintiffs alleged that defendant Baines, among other actions, engaged in workplace sabotage in order to create grounds for discipline and instituted punitive scheduling

---

[1] Although plaintiff Melendez is apparently deceased, the death has never been noted on the record nor has a motion for substitution of a party been made. As the court has concluded that the complaint should be dismissed, no further action is required pursuant to Fed. R. Civ. P. 25.

changes. In a Decision and Order filed July 14, 2006, this court granted the defendants' motions for summary judgment and dismissed the complaint (Item 72). On appeal, the Second Circuit vacated the order and remanded, reinstating one of the workplace sabotage claims and several of the punitive scheduling claims against defendant Baines. *Hicks v. Baines,* 593 F.3d 159 (2d Cir. 2010). The court also reinstated the plaintiffs' section 1983 claim. In all other respects, the decision was affirmed.[2] Defendant has now moved again for summary judgment dismissing the remaining claims (Item 94). For the reasons that follow, the motion is granted.

## BACKGROUND and FACTS

As this is the second motion for summary judgment, familiarity with the facts of the case will be assumed. Briefly, from approximately 1995 until 2002, defendant was Facility Director for the OCFS and had supervisory responsibility for two facilities in the City of Buffalo, the Richmond Avenue group home, a residential facility, and the Evening Reporting Center ("ERC") on Cortland Avenue. He supervised the plaintiffs, who worked as Youth Division Aides ("YDA") in those facilities. In 1996, a white YDA named Mark Pasternak filed a formal misconduct complaint against defendant, who is African-American, alleging a campaign of racial harassment. In 1997, plaintiffs participated in the investigation of Pasternak's complaint. In June 1998, OCFS investigators found defendant guilty of misconduct. He was fined $2,000 and was reprimanded for his behavior. Plaintiffs then testified in a Worker's Compensation proceeding brought by Pasternak.

---

[2] Defendant Johnson has been dismissed from the case. Hereafter, "defendant" will refer only to Baines.

On May 5, 1999, plaintiffs commenced this action (Item 1). They alleged that, following their participation in the Pasternak matters, defendant engaged in acts of retaliatory conduct against them. On remand, there are several specific allegations that the court must address. First, plaintiffs allege that on or about July 31, 1998, defendant purposefully left a window ajar in the locked "computer room" of the ERC, thereby prohibiting the plaintiffs from setting the facility alarm as they did not have a key to the computer room. Plaintiffs allege that they were then reprimanded for failing to activate the alarm. Second, plaintiffs allege that defendant intentionally adjusted shift times, break times, and work locations and assignments. Specifically, plaintiff Hicks alleged that defendant shortened his off-duty time between shifts and required him to attend training sessions during his off-duty time. Hicks also alleged that defendant assigned him to work at the Richmond Avenue group home notwithstanding his seniority rights to work at the ERC. Hicks alleged that defendant assigned him to the Richmond Avenue group home knowing that it housed a juvenile inmate who had brought a frivolous excessive force claim against Hicks at defendant's prompting, and had threatened violence against Hicks' family. Plaintiffs also alleged that defendant repeatedly required them to work their shifts alone, putting them at risk with the troubled youth they served.

The Second Circuit further found that plaintiffs had sufficiently stated a section 1983 claim based on a violation of the Equal Protection Clause. Specifically, plaintiffs alleged that they were treated differently than other similarly situated employees in that they were retaliated against for their participation in discrimination investigations and proceedings.

In support of his motion for summary judgment, defendant submitted an affidavit with several exhibits, including excerpts from the official logbooks of the Richmond Avenue

facility and the Cortland Avenue ERC. He stated that he was the Facility Director for the two facilities until January 2002, when he transferred to a different position at OCFS (Item 93, Att. 2, "Baines Aff.," ¶ 3).

Defendant stated in his affidavit that on July 31, 1998, the log books indicate that plaintiffs Smith and Melendez worked together at the ERC. Baines Aff., ¶ 11. They noted an open window at the beginning of their shift. Defendant stated that while he had keys to all the rooms in the ERC, he did not have the only key to the computer room. *Id.,* ¶ 13. Unit Administrators, the Assistant Director, and the maintenance man all had keys to the rooms. *Id.* Defendant asserts that the plaintiffs could have easily rectified the situation but failed to do so. *Id.,* ¶ 11. Plaintiffs have offered no evidence to substantiate that they were reprimanded for this incident. *Id.,* ¶ 42.

Additionally, defendant stated that mandatory training sessions were usually scheduled by OCFS, not by him. Baines Aff., ¶ 17. He acknowledged that the plaintiffs may have been inconvenienced from time to time, as were the other employees who were required to attend those sessions. *Id.* Additionally, the hours of the facility were changed from noon to 8:00 p.m. to 1:00 to 9:00 p.m., and again to 2:00 to 10:00 p.m. *Id.,* ¶ 18. These changes were instituted because the young people who reported to the ERC attended school and did not arrive at the facility until 3:00 or 4:00 p.m. *Id.* These changes angered the staff, including the plaintiffs, but were found to be in compliance with the collective bargaining agreement and were ratified by defendant's superiors in Albany. *Id.*

Defendant stated that staffing at the Richmond Avenue group home was required around the clock. Baines Aff., ¶ 21. The ERC was not a residential facility, and thus its

staffing needs were less. *Id.,* ¶ 24. Defendant stated that there were occasions when YDAs sometimes were alone for various reasons, including employee illness. *Id.,* ¶ 26. However, administrative personnel were on site at both facilities throughout the day. *Id.,* ¶ 27. Defendant has submitted the log books from the seven dates plaintiffs claim they were scheduled to work alone. The log books indicate that on April 3, 1998, plaintiffs Smith and Melendez worked together at the ERC (Item 93, Att. 1, Exh. C). On April 6, 1998, Melendez signed in at the ERC at 2:00 and left at 4:20 p.m. *Id.* Another employee, Harold Whatley, was present from 9:00 a.m. until 5:00 p.m. Programming at the ERC was cancelled, and plaintiff Melendez attended a grievance hearing at the Richmond Avenue group home from 2:00 until 4:20 p.m. *Id.* On April 11, 1998, plaintiff Smith was the only YDA present at the ERC. *Id.* He took the group of five children on a field trip to the movies. *Id.* On April 24, 1998, Plaintiff Melendez was on site at the ERC with Harold Whatley. Plaintiff Smith was on annual leave and plaintiff Hicks called in sick. *Id.* On May 8, 1998, plaintiff Hicks was the only YDA present at the ERC. He took the group of five children to an evening activity. *Id.* On May 9, 1998, plaintiffs Hicks and Smith worked together at the ERC. *Id.* Finally, on July 2, 1998, plaintiff Hicks worked at the ERC from noon until 8:00 pm. Harold Whatley was present until 4:00 pm, and plaintiff Hicks took the four children to a baseball game. *Id.* The log books indicate that none of the plaintiffs worked at the Richmond Avenue group home on any of the dates asserted.

Defendant stated that with regard to plaintiff Hicks' assertion that defendant scheduled him to work alone in the residential facility with a juvenile offender who filed a frivolous claim against him and threatened violence, defendant was not the supervisor of

5

the Richmond Avenue facility in July 2002 when this incident allegedly occurred, having transferred to a different position in January 2002. At that time, he had no supervisory authority over the plaintiffs. Baines Aff., ¶ 36. Defendant also stated that shift schedules were open for bidding based on seniority. *Id.,* ¶ 37. He was not able to manipulate plaintiffs' schedules as they assert so as to retaliate against them. *Id.,* ¶ 39. Defendant stated that "[i]t is apparent from the litigation spanning almost twelve years that every action I took as a manager throughout the pertinent time period, 1995 - 1999 which was not exactly what the plaintiff's (sic) wanted for themselves became fodder for this alleged retaliation." *Id.*

In response to the motion, plaintiffs have filed an attorney's affirmation with exhibits (Item 102). Plaintiff's counsel neglected to file an opposing statement of material facts pursuant to Local Rule 56(a)(2), an affidavit in opposition to the motion in accordance with Local Rule 7(a)(3), or an answering memorandum of law pursuant to Local Rule 7(a)(2)(A). The exhibits in opposition to the motion include a copy of the investigative report into the allegations of misconduct by defendant against Pasternak (Item 102, Exh. A), a copy of a letter to defendant informing him of the agency's determination regarding those allegations of misconduct (Item 102, Exh. B), and a portion of defendant's deposition testimony, in which he stated that he was the individual who decided to change the programming hours of the ERC (Item 102, Exh. C, p. 20). Plaintiffs' counsel has assumed that the court will consider affidavits that were submitted in opposition to the defendants' previous summary judgment motion filed in 2005. *See* Item 102, ¶ 3.

## DISCUSSION

**1. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A moving party is entitled to judgment as a matter of law if the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court, however, views all of the evidence presented in the light most favorable to the party against whom summary judgment is sought, and draws all reasonable inferences in his favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists when there is sufficient evidence favoring the nonmoving party such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party may not rest upon unsubstantiated allegations, conclusory assertions, or mere denials, but must set forth and establish specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). A metaphysical or other whimsical doubt concerning a material fact does not establish a genuine issue requiring trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 584. If there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

## 2. Retaliation Claims

The plaintiffs' retaliation claims are analyzed under familiar Title VII principles. *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause . . . "); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177 (2d Cir. 1996) ("We consider [plaintiff's] state law claims in tandem with her Title VII claims because New York courts rely on federal law when determining claims under the New York [State] Human Rights Law."). Title VII prohibits an employer from discriminating against an employee because that employee "opposed any practice" made unlawful by the statute or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Retaliation is unlawful when the retaliatory acts were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006).

"Retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis." *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973). First, the plaintiff must establish a *prima facie* case of retaliation by showing: "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Jute,* 420 F.3d at 173 (quoting *McMenemy v. City of Rochester*, 241

F.3d 279, 282-83 (2d Cir. 2001)).  The plaintiff's burden in this regard is "*de minimis*," and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive."  *Id.* (internal quotation marks omitted).

If the plaintiff sustains this initial burden, "a presumption of retaliation arises."  *Id.*  The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action."  *Id.*  If he succeeds, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action."  *Id.*  A plaintiff can sustain this burden by proving that "a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]."  *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (internal citation omitted).

However, Title VII "does not set forth 'a general civility code for the American workplace.'"  *White,* 548 U.S. at 68 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  "[P]etty slights or minor annoyances that often take place at work and that all employees experience" do not constitute actionable retaliation.  *Id.*  Thus, "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  *Id.* at 67.

On appeal from this court's previous order granting summary judgment and dismissing the complaint, the Court of Appeals found that one of plaintiffs' claims of workplace sabotage was sufficient to satisfy the third element of the *prima facie* case.

*Hicks v. Baines,* 593 F.3d 159, 168-69 (2d Cir. 2010). Specifically, plaintiffs alleged that defendant intentionally left a window open in a locked room, to which only he had a key, such that the plaintiffs were unable to arm the security system and were subsequently reprimanded.

In support of his motion for summary judgment, defendant has offered his own affidavit and copies of the log books for the ERC. He cannot swear that a window was or was not left open on July 31, 1998, but states that he was not the only person with a key to the second floor computer room. The Assistant Director, the Unit Administrator, and the maintenance man all had access to all the rooms of the facility. *See* Baines Aff., ¶ 13. The logs indicate that the open window was noted at the beginning of the plaintiffs' shift, but there is no indication that the plaintiffs made any attempt to rectify the situation and arm the security system. Moreover, there is nothing, save their conclusory allegations, to substantiate plaintiffs' claim that they were unfairly reprimanded following this incident.[3]

Assuming that the plaintiffs have asserted a sufficiently adverse employment action and an inference of retaliation, the court finds that defendant has successfully rebutted the factual basis of their claim. Defendant has stated that a number of other individuals had access to the locked room and could have assisted in closing the window and arming the system. Further, assuming that plaintiffs were verbally reprimanded for their failure to arm the facility security system, and given the facts as established in the record[4] that the

---

[3] Defendant states that there is no evidence of a formal reprimand, yet he does not specifically deny that plaintiffs may have been verbally reprimanded.

[4] Even if the court were to consider plaintiffs' affidavits submitted in opposition to the 2005 motion for summary judgment, such affidavits are not responsive to the defendant's current proffer of evidence in support of his motion. As stated above, once the movant offers a legitimate, non-retaliatory reason for the alleged actions, "the presumption of retaliation dissipates and the employee must show that retaliation

plaintiffs discovered the open window early in the shift and had the opportunity to access the room and close the window, such a verbal reprimand would not be out of line. It cannot be said that such a reprimand would be more than the type of "petty slights and minor annoyances" that fall outside Title VII. *See White,* 548 U.S. at 68. Having reviewed the record, and even granting plaintiffs the benefit of every favorable inference, plaintiffs have failed to show that defendant's actions were undertaken in retaliation for their cooperation in the Pasternak investigation.

The Court of Appeals also found that plaintiffs' claims of punitive scheduling survived the motion for summary judgment. Specifically, the plaintiffs alleged that defendant altered their work schedules, scheduled mandatory training during their off-duty time, assigned plaintiff Hicks to work at the Richmond Avenue group home despite his seniority rights to assignment at the ERC, and scheduled the plaintiffs to work alone on seven specific dates.

In support of his motion, defendant stated that he changed the programming hours of the ERC from noon to 8:00 p.m. to 1:00 to 9:00 p.m., and then again to 2:00 to 10:00 p.m. Baines Aff., ¶ 18. These changes were made to maximize the hours of staff interaction with the children and applied to everyone, not just the plaintiffs. *Id.* While the staff, including the plaintiffs, objected to the schedule change and complained that the children had less time with their families, defendant has proffered a legitimate, non-retaliatory reason for the schedule change. *Id.* In response, plaintiffs have offered nothing to suggest that the change in programming hours was in fact retaliatory.

---

was a substantial reason for the adverse employment action." *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005). Plaintiffs have failed to sustain this burden.

With regard to the claim that mandatory training sessions were scheduled during plaintiffs' off-duty time, defendant has stated in his affidavit that training sessions were generally scheduled by OCFS and the American Correctional Association ("ACA"). Baines Aff., ¶ 17.  When he conducted training sessions, he scheduled both a morning and afternoon session to avoid conflicts. *Id.* Defendant acknowledged that all staff members were inconvenienced from time to time, not just the plaintiffs, due to the scheduling of mandatory training sessions. *Id.* In response to this, plaintiffs have proffered no evidence to suggest that the scheduling of training sessions was retaliatory in nature.

Plaintiff Hicks alleged that defendant assigned him to work at the Richmond Avenue group home in July 2002, despite his seniority rights to work at the ERC and despite the presence of a juvenile offender who made a baseless charge against him at defendant's urging and threatened violence against his family.  In support of the motion, defendant has shown that in July 2002, he had transferred to another position and had no supervisory authority over the plaintiffs.  Baines Aff., ¶ 36, Exh. A.  Plaintiff Hicks has offered no evidence in response.

Finally, the plaintiffs alleged that they were scheduled to work alone on seven specific dates.  The Court of Appeals stated that "[a] reasonable employee in plaintiffs' position 'may well be dissuaded' from participating in a discrimination investigation or proceeding if he knew that in retaliation, . . . his work schedule would be changed such that he would have to work (alone) at a facility more dangerous and threatening than the facility at which he usually worked." *Hicks v. Baines,* 593 F.3d at 170.  In support of his motion for summary judgment, defendant has submitted log books from the ERC and the Richmond Avenue facility that indicate that plaintiffs did not work at the Richmond Avenue

facility, the facility "far more dangerous" than the ERC, on the seven days they allege they were scheduled to work alone, but were assigned to the ERC. Thus, the claim that the plaintiffs were scheduled to work alone among the troubled youth population at the Richmond Avenue group home in retaliation for their participation in protected activity is simply not borne out by the facts.

Having reviewed the log books for the seven dates that plaintiffs assert they were scheduled to work alone, it appears that there were only two, or possibly three, instances when plaintiffs actually worked alone at the ERC.[5] On April 3, 1998, plaintiffs Smith and Melendez worked together at the ERC.[6] On April 6, 1998, plaintiff Melendez was assigned to the ERC with YDA Harold Whatley. On April 11, 1998, plaintiff Smith was the only YDA on duty. On April 24, 1998, plaintiff Melendez was on duty, as was YDA Whatley.[7] On May 8, 1998, plaintiff Hicks was the only YDA on site. On May 9, 1998, plaintiffs Hicks and Smith worked together. On July 2, 1998, plaintiff Hicks worked from noon to 8:00 p.m. and Whatley worked until 4:00 p.m., leaving plaintiff Hicks alone for approximately four hours.[8]

---

[5] On July 2, 1998, plaintiff Hicks was scheduled to work part of the day with YDA Whatley, but it appears that Whatley attended a meeting. It is unclear from the log where that meeting took place.

[6] The log indicates that plaintiff Smith signed out of the ERC from 3:02 p.m. until 6:45 p.m. for the purpose of transporting the facility youth. In his affirmation, plaintiffs' attorney asserts that Smith thus worked alone because he was alone while transporting the group for a period in excess of three hours. Item 102, ¶ 29. A task such as transporting facility youth would not remotely constitute the type of punitive scheduling envisioned by the Second Circuit as an adverse employment action.

[7] Plaintiffs' counsel notes that the log indicates that Whatley left the ERC for approximately one hour to attend a meeting. Thus, he argues, plaintiff Melendez "was assigned to work by himself with the troubled youth appearing on that day." (Item 102, ¶ 34.) Clearly, plaintiff Melendez was not scheduled to work alone that day, and this brief absence by his coworker would not constitute an adverse employment action.

[8] Counsel notes that Whatley appears to have spent at least part of his shift at a meeting (Item 102, ¶ 40).

The Court of Appeals did not specifically find that being scheduled to work alone at the ERC was a sufficiently adverse employment action for purposes of the *prima facie* case. However, assuming for purposes of the motion that plaintiffs have stated a *prima facie* case of retaliation with regard to the few isolated instances where they worked alone at the ERC, defendant has offered legitimate, non-retaliatory reasons for those instances. Defendant stated that YDAs were sometimes required to work alone if a co-worker called in sick. Baines Aff., ¶ 26. The log indicates that on May 8, 1998, plaintiff Smith was scheduled to work with plaintiff Hicks but called in sick, leaving plaintiff Hicks the only YDA on duty (Item 93, Att. 1, Exh. C). Defendant also stated that, at times, the number of young people at the facility did not require more than one staff person. *Id.* On the two, or possibly three, occasions when the plaintiffs worked alone at the ERC, they accompanied the small group of four or five children on an outside activity. *Id.* Finally, defendant stated that scheduling needs at the Richmond Avenue group home sometimes required shifting a staff person from the ERC to the group home (Item 103, ¶ 15). The ERC log book from May 18, 1998 indicates that YDA Whatley was called to report to the Richmond Avenue facility, leaving YDA Valerie Summers the lone YDA at the ERC (Item 103, Att. 2, Exh. B). Thus, working a shift alone was something that occasionally affected all staff, not simply the plaintiffs, further weakening their claim of retaliation.

The plaintiffs have failed to show that they were scheduled to work alone at the restrictive Richmond Avenue group home. They have also failed to offer any proof to rebut the legitimate, non-retaliatory reasons that required them to occasionally work a shift alone at the ERC. Accordingly, the plaintiffs have failed to sustain their burden on the motion for summary judgment, and their retaliation claims under state and federal law are dismissed.

### 3. Section 1983 Claim

In reinstating plaintiffs' section 1983 claim alleging a violation of the Equal Protection Clause, the Court of Appeals found that "[t]he premise of this lawsuit is that plaintiffs were treated differently–that is, they suffered retaliation–on the basis of their participation in discrimination investigations and proceedings. That participation obviously constitutes an 'impermissible' reason to treat an employee differently." *Hicks v. Baines,* 593 F.3d at 171. In this case, there is no practical difference between a section 1983 retaliation claim and plaintiffs' retaliation claim under section 1981. As the court has concluded that plaintiffs suffered no actionable retaliation for their participation in protected activity, they have failed to state a *prima facie* case that defendant violated the Equal Protection Clause. Accordingly, plaintiffs' section 1983 claim is dismissed.

### CONCLUSION

The defendant's motion for summary judgment (Item 94) is granted, and the complaint is dismissed. The Clerk is directed to enter judgment for defendants and to close this case. The parties shall bear their own expenses.

So ordered.

              _____\s\ John T. Curtin____
              JOHN T. CURTIN
              United States District Judge

Dated: October 21  , 2011
p:\opinions\99-315.oct182011